First Nat. Bank of Memphis *v.* McCanless, Commissioner of Finance and Taxation.

(*Nashville,* December Term, 1947.)

Opinion filed January 16, 1948.

(1)

2

CHANDLER, SHEPHERD, HEISKELL & WILLIAMS, of Memphis, for appellant.

Roy H. Beeler, Attorney-General, William F. Barry, Solicitor-General, and Allison B. Humphreys, Jr., Assistant Attorney-General for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

The question presented on this appeal from the Chancery Court of Shelby County involves the alleged erroneous construction of the Hall Income Tax Law by the Commissioner of Finance and Taxation. It is a matter of first impression in this State. The question raised, to state it briefly, is what constitutes "taxable income" under our income tax statutes. The pertinent provisions of the statute, sec. 1123(1) *et seq.*, are:

"Beginning with the calendar year 1937 and for each calendar year thereafter, to be computed from January 1st to January 1st of each year, an income tax in the amount of six (6%) per cent per annum (except as provided in the next paragraph), shall be levied and collected on income derived by way of dividends from stocks, or by way of interest on bonds of each person, partnership, association, trust and corporation in the state of Tennessee who received, or to whom accrued, or to whom was credited during any year income from the sources above enumerated except as hereafter provided."

Section 1123(5) (c) provides:

"No person shall be assessed with this tax on any stock in any corporation where the value of the shares are assessed *ad valorem* to the stockholder by this state."

The complainant filed its original bill to recover certain sums of money claimed by the State under the above statute, the same having been paid to the Commissioner of Finance and Taxation under protest. The complain-

ant Bank was acting in a fiduciary capacity as trustee for various beneficiaries of active trusts. The basis of the right to recover the money so paid is stated in the complainant's brief as follows:

"The amounts sought to be recovered represent the tax on proportionate parts of trust funds invested by Appellant Trustee in the purchase of high grade bonds which the Trustee bought at premium prices, in other words, above par, and which premiums the Trustee is required to amortize over the remainder of the unexpired terms of the bonds so that, at the maturities of the bonds, the premiums will have been absorbed without the loss of part of the principal paid. Appellant emphasizes here that not one cent of the money involved in this case belongs to Appellant, but is money belonging to cestuis que trusts being administered by Appellant in its fiduciary capacity as Trustee.

"The original bill sets forth (Rec. pp. 5-8) that, for many years, the Appellant Trustee had returned for income tax under the Hall Income Tax Law that part of the proceeds of each interest coupon which represented the actual income derived by way of interest on bonds subject to the Hall Income Tax Law, and that, in the latter part of 1943, the Tennessee Department of Finance and Taxation 'took the position that the *total amount* received on coupons from bonds purchased was taxable regardless of the amount of premiums paid for such bonds'.

"The Appellant contends that the amounts representing amortized premiums are not income but are, on the contrary, a return of principal used to purchase the bonds, and that the tax under the Hall Income Tax Law is payable only on that part of the bond coupon which represents the interest *earned* on the *purchase price of the bond*."

The answer of the defendant Commissioner asserts that the Hall Income Tax Law levies a tax upon the gross interest returns from bonds rather than upon the net interest returns to the trustee from bonds purchased in its trust capacity. It is further contended on behalf of the Commissioner that the taxpayer is not entitled to deduct the cost of amortization of a premium paid for a bond because:

"(1) There is no statutory formula provided by the Hall Income Tax Law for the amortization of any premium which might be paid for a bond with a fixed due date.

"(2) There is no statutory formula for amortizing any premium which might be paid for bonds callable before maturity at the option of the maker.

"(3) In the absence of a statutory amortization formula, any plan of amortization must be arbitrarily adopted.

"(4) The Hall Income Tax Law is not a general income tax and purports to tax only the "income derived . . . by way of interest" on bonds. The right to amortize a premium paid for a bond could only exist under a system of taxation whereby the tax was laid upon the whole net income of a taxpayer from stocks and bonds. It would be as reasonable to permit a taxpayer to use the income from his bond investments to replace the value of worthless bonds disposed of below par, as it would be to permit the amortization of the premium paid for premium bonds; or, to let him pay a tax on the profit realized from the sale of stocks and bonds."

The Chancellor sustained the State's contention and dismissed the complainant's bill.

Able counsel for the complainant, and others who filed briefs as *amicus curiae*, argue with much force that the

chancellor was in error in sustaining the ruling of the Commissioner of Finance and Taxation, and especially his interpretation of the words "income derived by way of interest," etc.; that it is error because it results in levying a tax upon the *corpus* of trust estates.

It is also insisted that appellant "is entitled to the universally recognized rule of construction that revenue acts are to be construed strictly against the taxing authority and liberally in favor of the taxpayer." We concede, without citing cases, that the foregoing rule is generally adopted by State courts in passing upon the validity of taxes due the State or any political subdivision thereof.

We have given a rather elaborate statement of the contentions of the parties, but the question raised may be resolved within a narrow compass, to wit, does the income tax statute contemplate an assessment upon gross income or net income from interest upon bonds held by the taxpayer.

Many Federal Court cases are cited by counsel for the appellant in which the word "income" is defined. They have been given careful consideration and it should be noted that most of the cases cited involve the collection of income taxes by the Federal Government under a general income tax statute. It is conceded that under the Federal law the taxpayer is taxed on the "net income" as shown by his return. The Hall Income Tax Law does not provide for the payment of a tax upon "net income" from stocks and bonds.

This Court expressly held in Evans v. McCabe, 164 Tenn. 672, 52 S. W. (2d) 159, 617, that a statute levying a tax upon general income was unconstitutional. Thereafter the Legislature proceeded to enact Chapter 20,

Acts of 1931, Extra Session, which is involved in the instant case. So that instead of passing a statute providing for a general income tax, the Hall Income Tax Law was enacted providing for an income tax derived from a special source, to wit, interest on stocks and bonds. The clear intent of the Legislature was to provide for the assessment and collection of taxes upon property that paid no *ad valorem* tax. See subsection (c), Sec. 1123(5), quoted above.

The mere fact that the taxpayer paid a premium for the bond does not authorize him to deduct a portion of the interest for the purpose of amortizing the bond and thereby pay a tax upon what is denominated net income.

The argument advanced by counsel for the appellant is most ingenious and is not without reason to support it. It is claimed by appellant, in substance, that it paid $1102 for this $1000 bond. It matures in five years, the obligor agreeing to pay annual interest of $25. It is insisted that the State must forego its right to collect the total interest because the taxpayer would lose $102, the amount of the premium, unless he can deduct a certain sum each year for five years to amortize the bond and thus save himself harmless. This plan of amortization is permitted by the Federal income tax law, under which the taxpayer pays only on net income derived from all sources. The appellant insists that the same plan of payment is authorized under the Hall Income Tax Law. Our response is that it does not authorize it. There is not even a suggestion in the statute that a taxpayer in making his return can deduct anything from the annual interest on bonds held by him and upon which no *ad valorem* tax is assessed.

Moreover, the Trustee bases its claim upon the false assumption that having purchased the bond at a premium it must and will remain its property until it matures. The

8

bond, the premium upon which it would amortize, may not mature for many years, say 25 years. The holder "amortizes" for a few years and then sells it at a profit with the result that he has saved the amount reserved each year for amortization and made an additional profit by making a sale before it matures. This is clearly not permissible and we cannot lend our approval to a plan of taxation that would thus frustrate the taxing authority of the State.

Adverting to the question of legislative intent to tax income derived from interest in bonds rather than income from the bond itself, we note with approval the following statement by the learned Chancellor:

"This Court takes the view that in arriving at the legislative intent, we must consider not merely the words or phrases used, but also the background, purpose and general circumstances under which they were used.

"Section 28, Art. II, of the Constitution of 1870 requiring that all property be taxed equally and uniformly contained an exception as to stocks and bonds in this language:

" 'The Legislature shall have the power to levy a tax upon income derived from stocks and bonds.'

"The word 'income' is not defined, but the broad purpose was to leave it to the will of the legislature to tax the income from the bond rather than the value of the bond.

"For some reason the legislature elected not to tax the income from the bond, but instead only the income derived by way of interest on bonds; and only the dividends on stock but not all income from the purchase and sale of the stock itself."

The view thus expressed by the Chancellor finds support in the authorities generally to the effect "that it is improper, in construing a statute, to take a word or a few

words from its context, and, with them thus isolated, attempt to determine their meaning." 50 Am. Jur., p. 243.

Moreover, a construction should be avoided which would operate to impair, frustrate or defeat the object of the statute, which, in the instant case, was to raise revenue, not by taxing the value of the bond or the value of stocks nor "income" derived from dealing in such securities, but from the interest accruing thereon, i. e., total dividends on stocks and total amount of interest on bonds. This conclusion is justified by the fact that the Legislature knew that these securities were paying no *ad valorem* taxes and hence it was not unreasonable, but quite to the contrary, that they be taxed upon the total amount of revenue which they produced, to wit, dividends and interest.

If the right of bondholders to appropriate a part of the interest on bonds to amortize the sum paid for them above par, is sustained, then the tax statute fails in its purpose because the taxpayer is allowed to use "income derived from interest" for amortization and it thus disappears as a source of taxation.

We have given thoughtful consideration to many cases cited by appellant's counsel defining "income," but our decision cannot be made to rest upon a definition which would be contrary to the legislative intent and also impair, if not to defeat, the purpose of the statute.

The cases and authorities dealing with the question now before us are extremely rare. In support of the view herein expressed, counsel for the State has referred us to *Van Dyke* v. *City of Milwaukee*, 159 Wis. 460, 146 N. W. 812, 813, 815. In construing the statute of Wisconsin, which provides that the term "income" shall include "all interest derived from money loaned or invested in notes,

mortgages, bonds or other evidence of debt of any kind whatsoever,'' it was said:

"It is a matter of common knowledge that stocks and bonds are constantly bought both above and below par. To make the deduction claimed either by way of amortization of premiums or by way of deduction under section 1087m4 (b) as a 'loss actually sustained within the year and not compensated by insurance or otherwise,' or under section 1087m4 (a) as a depreciation of the property from which the income is derived, would require the taxing officers to deal with constantly fluctuating values of stocks, bonds, and other securities, and determine such values from time to time. *Non constat* that plaintiff may not sell his bonds at a greater premium than he paid before they mature. If deductions were made when bought above par, additions should be made when purchased below par. Such a rule would be as burdensome in the administration of the law as tracing dividends to their source, and was plainly not contemplated by the statute which declares that all interest on bonds should be income.''

While counsel for appellant insists that the above authority is not applicable, we think it is in point and most persuasive. We have not deemed it necessary to a correct decision of the question made on this appeal that the assignments of error be given separate and special consideration, nor have we thought it necessary that the Court respond to every argument of counsel for and against the opinion of the Chancellor, although they have commanded an unusual interest.

The assignments of error are overruled and the decree of the Chancellor is affirmed.

All concur.