**ENGLISH MOUNTAIN SPRING
WATER COMPANY**

v.

**Loren L. CHUMLEY, Commissioner
of The Tennessee Department
of Revenue.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Sept. 15, 2005 Session.

Oct. 25, 2005.

Permission to Appeal Denied by
Supreme Court April 24, 2006.

Charles R. Terry, Morristown, Tennessee; Ronald C. Newcomb, Knoxville, Tennessee; and William Lewis Jenkins, Jr., Dyersburg, Tennessee, for the Appellant, English Mountain Spring Water Company.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Jay C. Ballard, Assistant Attorney General, Nashville, Tennessee, for the Appellee, Loren L. Chumley, Commissioner of the Tennessee Department of Revenue.

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

## OPINION

This case involves the construction of Tenn.Code Ann. § 67–4–402 which imposes a privilege tax upon bottlers of "bottled soft drinks." The statute states that " 'bottled soft drinks' includes any and all nonalcoholic beverages, whether carbonated or not." The trial court determined that the Commissioner of Revenue correctly assessed the tax against the Appellant, English Mountain Spring Water Company, for its production, bottling, and sale of bottled spring water. Upon our finding that the language of the statute is ambiguous and, therefore, must be construed in favor of the taxpayer, we reverse the judgment of the trial court and remand.

### I. Background

The Appellant, English Mountain Spring Water Company, (hereinafter "English

Mountain") is a Tennessee corporation in the business of bottling and selling natural spring water. By notice dated March 19, 2004, the Appellee, Loren L. Chumley, Commissioner for the Tennessee Department of Revenue, (hereinafter "the Department") assessed English Mountain for a deficiency in payment of the bottlers privilege tax codified at Tenn.Code Ann. § 67–4–402. The tax was assessed for the period of August 1, 2000, through June 30, 2003, in the amount of $84,420.00, plus a penalty in the amount of $21,105.00 and interest in the amount of $13,105.00, for a total of $119,002.00.

On May 13, 2004, English Mountain filed a complaint in the Jefferson County Chancery Court challenging and disputing the Department's tax assessment. The complaint states that Tenn.Code Ann. § 67–4–402 allows the assessment of a bottlers tax against persons producing and selling "bottled soft drinks," but that English Mountain does not sell bottled soft drinks within the meaning of the statute and, therefore, the statute is inapplicable to English Mountain.

Both parties filed motions for summary judgment, and on November 3, 2004, the trial court ruled that bottled water is a "bottled soft drink" within the meaning of Tenn.Code Ann. § 67–4–402 and that the bottlers privilege tax was properly assessed against English Mountain. This appeal followed.

## II. Issue for Review

The sole issue we address in this case is whether the trial court erred in decreeing that the bottlers privilege tax found at Tenn.Code Ann. § 67–4–402 was properly imposed upon English Mountain for its production and sale of bottled spring water.

## III. Standard of Review

The standard governing this Court's review of a trial court's decision granting a motion for summary judgment is set forth by the Tennessee Supreme Court in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn.2000) as follows:

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d [423 (Tenn.1997)] at 426, *Byrd v. Hall*, 847 S.W.2d [208 (Tenn.1997)] at 210–211. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

A trial court's decision to grant a motion for summary judgment is solely a matter of law, and therefore, it is not entitled to a presumption of correctness. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Furthermore, the question before the trial court in the instant case was the proper construction of a statute which is also purely a question of law and, as such, a matter of *de novo* review by this Court. *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 506 (Tenn.2004).

In *Eastman Chemical Co., id.* at 507, the Tennessee Supreme Court restated the standards that guide a reviewing court in its construction of a statute as follows:

Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. *See Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn.2000); *Freeman [v. Marco Transp. Co.]*, 27 S.W.3d [909 (Tenn.

2000)] at 911. "'Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.'" *Lipscomb*, 32 S.W.3d at 844 (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn.1997)).

When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. *See id; Carson Creek Vacation Resorts, Inc. v. State Dep't Of Revenue*, 865 S.W.2d 1, 2 (Tenn.1993). Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. *State v. Walls*, 62 S.W.3d 119, 121 (Tenn.2001); *Freeman*, 27 S.W.3d at 911. The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. *Tennessee Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn.1984). The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning. *First Nat'l Bank of Memphis v. McCanless*, 186 Tenn. 1, 207 S.W.2d 1007, 1009–10 (1948).

The Court further states that "[s]tatutes imposing a tax are to be construed strictly against the taxing authority," [1]and in a pri-

or opinion, the Court notes that "[o]ften an elaboration is added to this basic canon of construction that if there are doubts or ambiguities contained in the statute, they must be resolved in favor of the taxpayer." *Crown Enterprises, Inc. v. Woods*, 557 S.W.2d 491, 493 (Tenn.1977).

## IV.  Analysis

■  As we have indicated, the statute authorizing the imposition of a privilege tax on soft drink bottlers is codified at Tenn.Code Ann. § 67–4–402. As originally enacted in 1937, the statute imposed a tax upon "[e]ach person doing business as a bottler or as a manufacturer of soft drinks"; however, the statute did not indicate the meaning of the term "soft drinks," or more precisely "bottled soft drinks," until enactment of the following section in 1963:

(1) "Bottled soft drinks" includes any and all nonalcoholic beverages, whether carbonated or not, such as soda water, cola drinks, orangeade, grapeade, gingerale and the like, and all bottled preparations commonly referred to as soft drinks of whatever kind or description which are closed and sealed in glass, paper, metal, plastic, or any type of container or bottle, whether manufactured with or without the use of syrup. Fluid milk with or without flavoring, natural undiluted fruit juice or vegetable juice, cider, and pure fruit juice concentrate to which no additive has been made, with only water being necessary to be added to restore the juice to its natural state, are exempted from the provisions of this section;and

---

**1.**  Although exemption provisions in a statute are construed against the person claiming the exemption, *Eastman Chemical, id.* at 507, in the instant matter the issue is whether the

taxpayer comes within the group taxed, not whether the taxpayer falls within a specified exemption.

(2) "Nonalcoholic beverages" means all beverages containing less than one half of one percent (.5%) alcohol by volume.

In its final judgment, the trial court explained its conclusion that English Mountain is subject to the tax based upon the following analysis of the above cited language:

The Court concludes that the Commissioner of Revenue properly assessed taxes upon bottled water manufactured or produced and sold by [English Mountain] pursuant to Tenn.Code Ann. § 67–4–402. The Court is satisfied that bottled water is a "bottled soft drink" by virtue of the fact that "bottled soft drinks" are defined in Tenn.Code Ann. § 67–4–402(a)(1) to include "any and all non-alcoholic beverages, whether carbonated or not ..." The statute then provides examples of bottled soft drinks. These examples do not, however, limit the above-quoted language. Plaintiff argues that bottled water is not a soft drink because it is naturally occurring. Yet by specifically excluding "fluid milk" and "natural undiluted fruit juice" from the definition, it is apparent that the legislature thought that "bottled soft drinks" otherwise extended to these naturally occurring beverages. Bottled water, however, was not exempt from the definition of "bottled soft drinks."

As the trial court states, the statute defines "bottled soft drink" to include "any and all nonalcoholic beverages." The statute further defines the term "nonalcoholic beverage" as "all beverages containing less than one half of one percent (.5%) alcohol by volume" and it is not disputed that, given this definition as well as the common meaning of "nonalcoholic," bottled water is nonalcoholic. However, the statute does not define the term "beverage." Therefore, it is our duty, using accepted rules of statutory construction, to determine the intended meaning of the term "beverage" and whether that meaning encompasses bottled spring water.

■ In seeking to determine the "natural and ordinary meaning" of statutory language, the usual and accepted source for such information is a dictionary. *See State v. Givens,* No. 01C01–9307–CR–00203, 1994 WL 406187, at *3 (Tenn Ct. Crim.App. Aug. 4, 1994) ("Obvious sources for [natural and ordinary] meaning are dictionaries.") The Department asserts that "the vast majority of sources conclude that water is a beverage." To support this assertion, the Department submits the following definitions of "beverage" as found in various dictionaries and similar sources, grouped according to each source's definition of the term as related to the inclusion or exclusion of water:

GROUP A

| | |
|---|---|
| A drinkable liquid | 1)Merriam – Webster's Collegiate Dictionary<br>2)Merriam – Webster Online Dictionary |
| A drink of any type | 3)Cambridge Dictionary of American<br>4)English Cambridge Advanced Learner's Dictionary |
| Any liquid suitable for drinking | 5)Roget's II: The New Thesaurus<br>6)Ultralingua.net<br>7)Lookwayup.com<br>8)WordNet 2.0 Vocabulary Helper<br>9)Rhymezone.com |
| A drink specifically prepared for human consumption. Almost always it largely consists of water. These include water, from the tap or from a bottle. | 10)Wikipedia |
| Any liquid for drinking, esp. tea, coffee, milk, etc. | 11)The Chambers Dictionary |

GROUP B

| | |
|---|---|
| Any one of various liquids for drinking, usually excluding water. | 1)The American Heritage Dictionary of the English Language<br>2)The American Heritage College Dictionary |
| Any drinkable liquid, usually excluding water or medicine. | 3)Wordsmyth |
| **GROUP C** | |
| Any potable liquid, especially one other than water. | 1)Random House Webster's Unabridged Dictionary |
| A drink, especially one other than water. | 2)The New Oxford American Dictionary |
| **GROUP D** | |
| A drink other than water. | 1)Encarta World English Dictionary<br>2)Compact Oxford English Dictionary |
| **GROUP E** | |
| Liquid for drinking, drink; usually applied to drink artificially prepared and of an agreeable flavor. | 1)Webster's Revised Unabridged Dictionary<br><br>2)Webster Dictionary, 1913<br>3)One Look Dictionary Search |
| A prepared drink, especially a hot drink (eg tea or coffee) or an alcoholic drink (eg beer). | 4)AllWords.com |
| **GROUP F** | |
| Drink; liquor for drinking. | 1)The Oxford English Dictionary<br>2)Webster's 1828 Dictionary |

The sources that offer the strongest support for the Department's argument that the term "beverage" includes water are those set forth in Group A, as these definitions are quite broad and generally define "beverage" as a drinkable liquid of any type. However, in our view some of the sources listed in Group A are of questionable authority.

■ In this regard, we note the source designated Wikipedia which specifically defines bottled water as a beverage. Wikipedia, the Free Encyclopedia (http://en.wikipedia.org), is a computer internet site describing itself as follows:

> Wikipedia … is a multilingual, Web-based, free-content encyclopedia. It is written collaboratively by volunteers with wiki software, meaning articles can be added or changed by nearly anyone.

It appears that the only case in the United States that has ever referenced Wikipedia is a nonpublished/nonciteable California case. *See Patel v. Shah*, No. G033741, 2004 WL 2930914, (Calif. App. 4 Dist. Dec. 17, 2004). Given the fact that this source is open to virtually anonymous editing by the general public, the expertise of its editors is always in question, and its reliability is indeterminable. Accordingly, we do not find that it constitutes persuasive authority.

■ In addition to Wikipedia, the Department includes several other computer internet sites in Group A. We take judicial note of the fact that the internet did not exist either in 1937, when the statute was initially enacted, or in 1963 when that portion of the statute containing the disputed definitions was enacted, and there is no indication that the information presented at these web sites is derived from sources that were in existence at either of these times. The time most relevant in determining the meaning of a statutory term is the time when the statute became law. *MCI Telecommunications Corporation v. American Telephone and Telegraph Co.,*

512 U.S. 218, 228, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994). However, even accepting the definitions presented by these sources, we are still compelled to disagree that "the vast majority" of the sources offered establish that water is a "beverage."

Excluding Wikipedia, the Department lists a total of twenty-three sources. While several of these present definitions of beverage which are broad and all inclusive and indicate that water is included in the definition, we do not agree that the vast majority of the sources cited support this position. Of the twenty-three sources listed, three state that water is "usually" excluded from the definition of "beverage"; two state that a beverage is "especially one other than water"; and two exclude water from the definition of beverage without qualification. Furthermore, three of the sources referenced define "beverage" as a drink that is "usually artificially prepared and of an agreeable flavor" (thereby implying that water is not included), one source states that a beverage is especially a hot drink or an alcoholic drink, and two sources define "beverage" as "liquor for drinking." Thus, of the twenty-three sources listed by the Department, thirteen indicate that water either is not or may not be included in the plain meaning of the term "beverage." In addition to these references, our own research reveals the following definitions of "beverage" which also show that water is, or may be, excluded the definition of "beverage":

> A liquid for drinking, usu. excluding water. WEBSTERS II NEW COLLEGE DICTIONARY 108 (3d ed.2005)
>
> [A]ny drink other than water. THE CASSELL DICTIONARY OF WORD HISTORIES 60 (1st ed.1999)
>
> [A] liquid for drinking; *esp:* a liquid (as milk or coffee) other than water. THE MERRIAM-WEBSTER DICTIONARY FOR LARGE PRINT USERS 100 (2d ed.1975).(emphasis in original)

Finally, we note the following definition that appears in a source roughly contemporaneous with the 1963 enactment of the definition section of the statute:

> [L]iquid for drinking; *esp:* such liquid other than water (as tea, milk, fruit juice, beer) usu. prepared (as by flavoring, heating, admixing) before being consumed. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 210 (1961).(emphasis in original)

The Department asserts that it does not argue that all water is a beverage, but that water becomes a beverage once it has been filtered and bottled. "Bottled water is prepared and changed from its natural form. For this reason it constitutes a beverage." The Department presents no supporting authority for its apparent argument that changing water from its natural form brings it within the common meaning of "beverage." Further, we do not agree that purification changes water from its natural form. As the Department notes, water is a liquid substance made of two parts hydrogen and one part oxygen. In its natural form, water is nothing more nor less than that chemical compound. Filtration functions to eliminate foreign matter from the water, with the result that only water remains. Rather than changing water from its natural form, filtration removes that which is not water and thereby returns water to its natural form. And whether water is contained in a bottle or lake bears no relation to whether the water so contained is in its natural form.

Based upon the sources presented, we must conclude that water may not be included in the common meaning of the term "beverage." Therefore, the term and the legislature's intent in utilizing the term is ambiguous. Further examination of the statute does not dispel this ambiguity.

The Department argues that the statute "utilizes broad language and should be read to implement its framers' intent to tax drinkable liquids when they are prepared, bottled, and sold." In support, the Department notes that the statute states that "'bottled soft drinks' *includes any and all* nonalcoholic beverages," and the statute applies to a beverage "*whether* carbonated *or not*" and to soft drinks "*of whatever kind or description*" which are closed and sealed in glass, paper, metal, plastic, *or any type of container* or bottle, whether manufactured *with or without* the use of syrup." The Department contends that "[a]ll these terms suggest that this statute was meant to extend as far as possible in scope." The Department asserts that, while there is no recorded legislative history with respect to the passage of the statute, at the time the statute was enacted prohibition of the sale of alcoholic beverages was ending and the Tennessee legislature was enacting a number of statutes taxing the production, bottling, and sale of alcoholic beverages. The Department argues that by enacting Tenn.Code Ann. § 67–4–402 the legislature "was trying to tax the bottling of all beverages, both alcoholic and nonalcoholic." The Department acknowledges that "water was not commonly sold in bottles, if at all, in 1937"; however, the Department contends that the statute "must be read to address emerging products" and that "filtered, prepared, bottled water is exactly the type of bottled beverage the legislature sought to tax when it adopted the broad terminology of the [statute]."

While it is true that the statutory language is broad and inclusive with respect to "*beverages,*" the statutory language does not indicate that the tax is to be imposed upon any items other than "beverages." As we have stated, it is not clear based upon the common meaning of the term "beverage" that the legislature in-

tended that water be included. If the legislature did not conceive water to be a beverage in the first place, the intent to tax all beverages would not change that conception.

Further, it is unclear from the language of the statute that bottled water is the type of drink that the legislature sought to tax in enacting Tenn.Code Ann. § 67–4–402. The statute lists examples of various drinks that are subject to the tax—"soda water, cola drinks, orangeade, grapeade, [and] gingerale." The statute specifically exempts other drinks—"fluid milk with or without flavoring, natural undiluted fruit juice or vegetable juice, cider, and pure fruit juice concentrate to which no additive has been made, with only water being necessary to be added to restore the juice to its natural state." Although bottled water as we know it today was unavailable in 1937 and 1963, based upon these examples of included and exempted items, it is our determination that bottled water bears more in common with the exempted items than with the included items. The exempted items appear to be characterized by the fact that, although altered in some sense (flavoring added to milk and water removed from concentrated fruit juice), they are naturally occurring substances, and retain that identity as marketed. It is reasonable to assume that had bottled water been a commodity at the time, as a naturally occurring substance and identified by that naturalness as marketed, it would not have been the legislature's intent to subject it to taxation under the statute. The Department points out that "soda water" is included in the list of drinks subject to the tax and argues that soda water is carbonated water and that "[c]arbonated water without carbonation is simply water." We do not agree. There is a meaningful distinction between soda water and water in that the essential iden-

tity of soda water is derived from the fact that it *is* carbonated and it obtains its identity artificially. Its identity as artificially produced carbonated water dominates and replaces its identity as simple natural water.

## V. Conclusion

Based upon our analysis as set forth herein, we do not find a clear legislative intent that Tenn.Code Ann. § 67–4–402 impose a tax on bottled water. We will not amend the statute to clarify its terms, that being the prerogative of the legislature, not the judiciary. *In re Swanson,* 2 S.W.3d 180, 187 (Tenn.1999) (citing *Manahan v. State,* 219 S.W.2d 900, 901 (1949)). In compliance with the previously noted standard that tax statutes are to be construed strictly against the taxing authority and that doubts or ambiguities are to be resolved in favor of the taxpayer, we hold that the production, bottling and sale of bottled water are not subject to taxation under Tenn.Code Ann. § 67–4–402.

Accordingly, the judgment of the trial court is reversed, and the case is remanded for whatever further action may be necessary as consistent with this opinion. Costs on appeal are assessed against the Appellee, Loren L. Chumley, Commissioner of the Tennessee Department of Revenue.