# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 26, 2010

## STATE OF TENNESSEE v. RHONDA LOUISE MEDLEY

**Direct Appeal from the Circuit Court for Bedford County**
**No. 16402      Robert Crigler, Judge**

---

**No. M2009-02446-CCA-R3-CD - Filed July 12, 2011**

---

The defendant, Rhonda Louise Medley, was convicted in the Bedford County Circuit Court of five counts of rape of a child and subsequently sentenced to an effective term of forty years in the Department of Correction. On appeal, the defendant challenges her convictions and sentences, specifically asserting that: (1) the evidence was insufficient to support the convictions; (2) the trial court erred in imposing consecutive sentencing; and (3) the trial court erred in denying the motion to declare Tennessee Code Annotated section 39-13-522(b)(2)(A) unconstitutional. Following review of the record, we conclude that the evidence was sufficient to support the convictions and that the challenged portion of the statute is not unconstitutional. However, while the trial court appears to have appropriately applied consecutive sentencing, it erred in imposing fifteen-year terms for Counts Two through Five because Tennessee Code Annotated Section 39-13-522(b)(2)(A) mandates that these sentences be set at a minimum of twenty-five years each. As such, we vacate those sentences and remand for resentencing with regard to those convictions, as well as for reconsideration of the imposition of consecutive sentencing in light of the ordered changes in the sentence lengths. The decision of the trial court is affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Vacated in Part; and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Rhonda Louise Medley.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Charles F. Crawford, Jr., District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Procedural History

The charges in this case arose from the twenty-eight-year-old female defendant's act of having sex with the twelve-year-old male victim on multiple occasions. Based upon these actions, the defendant was indicted by a Bedford County grand jury for five counts of rape of a child.

At the subsequent jury trial, the victim testified as to his date of birth and stated that in July 2007, he was twelve years old. The victim explained that, during that month, he had sex with the defendant in her residence a total of five times. According to the victim, he met the defendant for the first time during the summer of 2007 through his friend, who was the defendant's nephew. The victim explained that there were typically five or six children around the defendant's house and that he enjoyed visiting there and playing video games with the defendant's nephew.

The defendant indicated that on July 4, he and the defendant began writing each other notes about having sex. He testified that, following a July 4th trip to Portland, he and the defendant had sex for the first time. He stated that he was at the defendant's residence and that she told him to come into her room, at which point she began to remove her clothing. After the victim removed his clothing, he and the defendant had sexual intercourse. The victim also recalled that on this occasion, the defendant told him that he did not need to wear a condom because she could not have babies and that he should not tell anyone about them having sex.

The victim then proceeded to describe a second instance of sexual intercourse with the defendant that occurred a few days later in the defendant's bedroom. The victim then testified to a third instance of sexual contact in the defendant's bedroom, occurring several days later. He stated that on this occasion, the defendant performed oral sex on him and that they then had intercourse. The victim also related details about the fourth and fifth sexual encounters in the defendant's bedroom during which he and the defendant had sexual intercourse. The defendant specifically testified that each of these acts occurred during the month of July 2007. He further indicated that, on each occasion, his penis entered the defendant's vagina and that he ejaculated. The victim testified that the defendant would sometimes leave her t-shirt on during sex, but he stated that he had seen a tattoo of two dolphins on her back and a tattoo on her ankle. The victim also indicated that he believed that the defendant had her belly button pierced.

The victim testified that, following the last sexual encounter with the defendant, she

informed him that they needed to stop having sex because she feared that her children would be taken from her. The defendant told the victim that she "would wait for [him] until he turned [eighteen]." The victim later told several of his friends about the sexual encounters with the defendant, and the defendant later received an anonymous letter in the mail regarding her relationship with the victim. Thereafter, the victim spoke with Officer Carol Jean and Detective Brian Crews concerning his activities with the defendant. He failed to tell the officers that the defendant had performed oral sex on him, but he explained that he did so because the defendant had told him not to tell anyone.

The next witness called by the State was Officer Carol Jean of the Shelbyville Police Department. Officer Jean testified that she received a phone call regarding an allegation of child sexual abuse involving the victim and the defendant and that she immediately called the Department of Children Services' (DCS) hotline to make a referral. The next morning, Officer Jean and a worker from DCS went to the victim's school. While the victim disclosed "a little detail" of the sexual contact with the defendant to Officer Jean, he indicated that he preferred to speak with a male officer, who was then called. Following the interview with the victim, Officer Jean went to the defendant's residence in Bedford County and requested that she come to the police department. During the subsequent interview, the defendant admitted that she had sexual intercourse with the twelve-year-old victim on several occasions and acknowledged that she had performed oral sex on him on at least one occasion.

Investigator Brian Crews of the Shelbyville Police Department, the male officer called by Officer Jean, testified that he reported to the victim's school in order to conduct an interview. During the interview, the victim told Investigator Crews the details of his sexual contact with the defendant. The victim told Investigator Crews about the tattoo on the defendant's back and that her belly button was pierced. Investigator Crews later recorded an interview with the defendant at the police department during which the twenty-eight-year-old defendant admitted that she had engaged in acts of sexual penetration with the twelve-year-old victim. The defendant told Investigator Crews that the sexual contact began sometime after July 4, 2007, and ended before the beginning of the school year on August 6.

Detective Rebecca Hord of the Bedford County Sheriff Department testified that on August 21, 2007, she received an anonymous letter in the mail containing allegations that the defendant was having sexual contact with a twelve-year-old boy. Detective Hord, who had known the defendant for a long time, testified that later that same day the defendant came to the sheriff's department and told her that someone in her neighborhood was making false allegations about her having sex with a twelve-year-old boy. Detective Hord recalled seeing the defendant a week later in court, and the defendant approached her and apologized for lying to her. At that time, the defendant admitted that she had sex with the victim "two or

three times."

The defense called Derek Clanton, an employee at a tattoo and body piercing studio, as its first witness. He testified that the defendant came into the studio to get her belly button pierced on August 17, 2007. Clanton explained that he saw no evidence of any previous belly button piercing. Clanton testified that the defendant, during this visit, told him that she had been accused of molesting a twelve-year-old boy.

The next witness called by the defense was Pamela Goetz, the defendant's sister. She testified and produced photographs of the defendant's tattoos, particularly the tattoo of the dolphins on her back and of the tattoo "right above her private area that says *sexy* with two Playboy bunnies, one on each side." She also described other tattoos that were on the defendant's ankles and shoulder. She stated that the defendant had these tattoos prior to February 1, 2007. The defense then called Connie Honea, the defendant's aunt, and Francis Medley, the defendant's mother-in-law, to verify the existence of the defendant's tattoos and that they had been there for approximately a year and a half. No further witnesses were called, and the case was submitted to the jury.

The jury found the defendant guilty on all counts, and a sentencing hearing was then held. At the hearing, the State presented the testimony of the victim's mother, who testified that he had become withdrawn and angry following the rapes. The defense called Dr. Alex Fider, the defendant's psychiatrist, who testified regarding her mental and social history. After hearing the evidence presented, the trial court sentenced the defendant, as a Range I offender, to twenty-five years for Count One and to fifteen years for each of the remaining convictions. The court further ordered that the sentences were to be served at 100% in the Department of Correction. The court also addressed the issue of consecutive sentencing and concluded that, pursuant to Tennessee Code Annotated section 40-35-115(b)(5), consecutive sentencing was appropriate because the defendant had been convicted of two or more statutory offenses involving sexual abuse of a minor. Balancing the required factors, the trial court ordered that the twenty-five-year sentence be served consecutively to the fifteen-year sentences, which were ordered to be served concurrently with each other, resulting in an effective sentence of forty years. As required, the trial court also considered whether the total aggregate sentence was the "least severe necessary to protect the public from the defendant's future criminal conduct" and whether the sentence was "reasonably related to the severity of the offenses."

On July 18, 2008, the defendant filed an untimely motion for new trial. Following a hearing, the trial court denied the defendant's motion for new trial in a written order filed on July 25, 2008. The defendant then filed a petition for post-conviction relief, and, after a hearing on September 21, 2009, the trial court granted the defendant a delayed appeal. On

October 22, 2009, the defendant filed a second motion for new trial and, additionally, asked the trial court to declare Tennessee Code Annotated section 39-13-522(b)(2)(A) unconstitutional. The trial court heard the second motion for new trial on November 16, 2009, and it was denied. On November 17, 2009, the defendant filed a timely notice of appeal.

## Analysis

On appeal, the defendant has challenged both her convictions and sentences. Specifically, she raises three issues for our review, those being whether: 1) the evidence was sufficient to support the convictions; (2) the trial court erred in imposing consecutive sentencing; and (3) the trial court erred in denying the motion to declare Tennessee Code Annotated Section 39-13-522(b)(2)(A) unconstitutional.

## I. Sufficiency of the Evidence

First, the defendant contends that the evidence presented at trial was insufficient to support her five convictions for rape of a child. When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Goodwin,* 143 S.W.3d 771, 775 (Tenn. 2004); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith,* 24 S.W.3d 274, 279 (Tenn. 2000). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon the direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

As noted, the defendant was convicted of five counts of rape of a child. Rape of a child is the unlawful penetration of a victim by the defendant or the defendant by a victim,

if the victim is more than three years of age but less than thirteen years of age. T.C.A. § 39-13-522(a) (2006). Tennessee Code Annotated section 39-13-501 defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body. . . ." T.C.A. § 39-13-501(7) (2006).

A review of the briefs filed in this case reveals that the defendant's argument regarding sufficiency is essentially based only on a challenge to the victim's credibility. Specifically, she complains that the jury should not have accredited the victim's testimony because of his "inability to identify the [defendant's] tattoos that he should have obviously known of" and because he was unable to testify definitely to the number of times and dates on which the offenses occurred. It has been stated, on multiple occasions, that it is not the function of this court to reweigh or re-evaluate credibility determinations made by the jury, which is essentially what the defendant is asking that we do in considering this issue. The victim in this case testified, and he was cross-examined by the defense to highlight the inconsistencies or gaps in his testimony. This testimony was heard by the jury during the trial. Again, questions about the credibility of witnesses is a matter left to the sound discretion of the trier of fact, and we will not disturb those findings on appeal. *See Evans*, 108 S.W.3d at 236.

Regardless, in this case, we conclude that there was clearly sufficient evidence presented from which a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of the charged offenses. The victim provided testimony that while he was twelve years old, he and the defendant had sexual intercourse a total of five times at her residence. The victim further described each act of sexual contact with the defendant in sufficient detail to establish that penetration occurred. While the victim did not specifically testify as to the dates on which the rapes occurred, he was quite clear that they all occurred in the month of July when he was twelve years old. He also provided details in his testimony as to other events, *i.e.*, the Portland trip, to give reference points for the time-frame that these acts occurred.

Additionally, the State introduced the defendant's own confession to the crimes in which she acknowledged that she had sexual intercourse with the victim on several occasions. The defendant also acknowledged that she had performed oral sex on the victim on one occasion, just as the victim testified. Moreover, in her interview with the police, the defendant told detectives that the sexual contact began sometime after July 4, 2007, and ended before the beginning of the school year on August 6, again corroborating the testimony given by the victim. Finally, the State also presented the testimony of Detective Hord, who stated that the defendant had admitted to her that she had sex with the victim "two or three times." Clearly, this evidence was sufficient to support the verdicts returned by the jury.

## II. Sentencing

Next, the defendant asserts that the trial court erred in its imposition of consecutive sentencing. She contends that "[i]mposition of consecutive sentencing in this case was contrary to Tennessee's consecutive sentencing guidelines and purposes." On appeal, the court must review issues regarding the length and manner of service of a sentence *de novo* with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's actions is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is the defendant, not the State, who bears the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts.

When a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. 40-35-115(a) (2006). As relevant here, a trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of [the] defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

T.C.A. § 40-35-115(b)(5). Additionally, an order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-103(1) (2006). Moreover, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." *Id*. at (2).

Our preliminary review indicates that the record supports the trial court's application of consecutive sentencing based upon the application of section 115(b)(5). The record clearly delineates that the court considered all the required factors in reaching its decision. Moreover, we find no merit to the defendant's contention that the trial court improperly considered the "seriousness of the offense" in imposing consecutive sentences, as the court is, in fact, required to do. *See* T.C.A. § 40-35-102(1). We further disagree with the defendant's contention that the trial court used the enhancement and mitigating factors as a basis for consecutive sentencing, as it is established that the trial court's reason for imposing

consecutive sentences was the section 115(b)(5) factor. However, we elect to not conduct a full review of consecutive sentencing because, as explained below, remand for reconsideration of this issue is necessary on other grounds.

As previously noted, the trial court sentenced the defendant to twenty-five years for Count One and to fifteen years each for Counts Two through Five. In their brief, the State argues that the imposition of the fifteen-year sentences was error, as they are violative of Tennessee Code Annotated section 39-13-522, which states in part:

Notwithstanding title 40, chapter 35, a person convicted of a first or subsequent violation of this section shall be punished by a minimum period of imprisonment of twenty-five (25) years. The sentence imposed upon any such person may, if appropriate, exceed twenty-five (25) years, but in no case shall it be less than the minimum period of twenty-five (25) years.

T.C.A. § 39-13-522(b)(2)(A) (2006). The issue was raised at the trial level, and the court offered the following interpretation of the statute's meaning:

It's my duty to follow the law that the legislature has adopted. And [twenty-five] years is the minimum sentence. I do, however, disagree. The State did not argue this. [Trial counsel] was saying that it would have to be [fifty] years. Have to be [twenty-five] plus [twenty-five]. I do not actually read the statute that way, though.

Notwithstanding the provisions of Title 40, Chapter 35, a person convicted of a first or subsequent violation of this section shall be punished by a minimum period of imprisonment of [twenty-five] years. The sentence imposed upon any such person, may if appropriate, exceed [twenty-five] years but in no case shall it be less that the minimum. I don't think that says if stacked, the cases, it has to be [twenty-five] plus [twenty-five].

From these statements on the record, we glean that the trial court interpreted the statute to mean that if there were multiple convictions, which were to be served consecutively, the only requirement would be that the combined sentences reflect a minimum of twenty-five years of incarceration. The State cites to no contrary authority found in the State of Tennessee nor can we find where the statute has actually been interpreted previously.

In matters of statutory interpretation, we apply a *de novo* standard of review. *State v. Wilson*, 132 S.W.3d 240, 241 (Tenn. 2004). Generally, when construing a statute, every word within the statute is presumed to "have meaning and purpose and should be given full

effect." *State v. Odom*, 928 S.W.2d 18, 29-30 (Tenn. 1996) (quoting *Marsh v. Henderson*, 424 S.W.2d 193, 196 (Tenn. 1968)). This court's primary duty in construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995); *see also State v. Davis*, 940 S.W.2d 558, 561 (Tenn. 1997). Legislative intent should be gleaned from the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." *Carter v. State*, 952 S.W.2d 417, 419 (Tenn. 1997). "In seeking to determine the 'natural and ordinary meaning' of statutory language, the usual and accepted source for such information is a dictionary." *English Mountain Spring Water v. Chumley*, 196 S.W.3d 144, 148 (Tenn. Ct. App. 2005). Furthermore, this court should construe a statute so that its component parts are consistent and reasonable, and inconsistent parts should be harmonized where possible. *Odom*, 928 S.W.2d at 30. In order to determine the intent of the legislature when confronted with an issue of statutory interpretation, "this court may look to the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005) (internal quotation marks and citation omitted.)

The trial court's interpretation conflicts with ordinary and natural reading of the plain language of the statute. The statute specifically states that "a person convicted of a first or subsequent violation of this section shall be punished by a minimum period of imprisonment of twenty-five (25) years." T.C.A. § 39-13-522(b)(2)(A). This language appears unambiguous. The only natural reading of that language is that the legislature intended for the sentence for each conviction, whether the first or a subsequent one, to be twenty-five years. This interpretation is consistent with the overall statutory scheme. "[I]f the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" then a court's statutory interpretation "inquiry must cease." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)).

The statute further provides that "[t]he sentence imposed upon any such person may, if appropriate, exceed twenty-five (25) years, but in no case shall it be less than the minimum period of twenty-five (25) years." *Id*. Rape of a child is a Class A felony, the range of punishment for which is fifteen to sixty years. T.C.A. § 40-35-112(a)(1) (2010). Thus, the statute provides that if the person convicted of this offense is sentenced in a higher range, *i.e.* as a multiple or persistent offender, then the sentence for each conviction may be set higher than the required twenty-five-year minimum sentence, if appropriate. By inference, if the defendant is sentenced as a Range I offender, as the maximum sentence for that range is twenty-five years, the sentence to be imposed must be twenty-five years for each offense of rape of a child.

Based upon the plain language of the statute, because the defendant was a Range I offender, the trial court was statutorily required to impose twenty-five-year sentences for each conviction in this case. Therefore, we must remand this case to the trial court for resentencing in Counts Two through Five. Moreover, the trial court should reconsider the issue of consecutive sentencing in light of the change in sentence length to ensure that the length of the new sentence is justly deserved in relation to the seriousness of the offenses.

## III. Constitutionality

Finally, the defendant contends that the trial court erred in denying her motion to declare Tennessee Code Annotated section 39-13-522(b)(2)(A) unconstitutional. As previously noted, that portion of the statute provides:

> Notwithstanding title 40, chapter 35, a person convicted of a first or subsequent violation of this section shall be punished by a minimum period of imprisonment of twenty-five (25) years. The sentence imposed upon any such person may, if appropriate, exceed twenty-five (25) years, but in no case shall it be less than the minimum period of twenty-five (25) years.

T.C.A. § 39-13-522(b)(2)(A). The defendant contends that this portion of the statute is unconstitutional because: (1) the mandatory sentencing application of the statute nullifies and is contrary to the mandates of Tennessee Code Annotated section 40-35-210 and Tennessee's sentencing scheme generally; (2) the mandatory sentencing application of the statute denies a defendant his right to individualized sentencing considerations; and (3) the mandatory sentencing application of the statute requires enhanced sentencing by the trial court without any determination of enhancing factors. The defendant bases her argument on multiple constitutional provisions. She asserts that the statute violates the prohibition against cruel and unusual punishment found in the Eighth and Fourteenth Amendments of the United States Constitution and article I, section 16 of the Tennessee Constitution. Additionally, the defendant argues that the trial court's sentencing under the statute violated her due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section Eight of the Tennessee Constitution.

Issues of constitutional interpretation are questions of law, which the court reviews *de novo* without any presumption of correctness given to the legal conclusions of the court below. *State v. Burns,* 205 S.W.3d 412, 414 (Tenn. 2006) (citing *S. Constructors, Inc. v. Loudon County Bd. Of Educ.,* 58 S.W.3d 706, 710 (Tenn. 2001)). Applying this standard in our review of the trial court's determination, we conclude that the court correctly ruled that Tennessee Code Annotated section 39-13-522(b)(2)(A) is constitutional.

-10-

The Eighth Amendment, which is applied to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment and requires that the punishment imposed must be proportional to the severity of the offense in the capital case context. *State v. Harris,* 844 S.W.2d 601, 602 (Tenn. 1992) (citing *Weems v. United States,* 217 U.S. 349, 367 (1910)). Yet, "reviewing courts should grant substantial deference to the broad authority legislatures possess in determining punishments for particular crimes; 'outside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.'" *Id*. at 602 (quoting *Solem v. Helm,* 463 U.S. 277, 289-90 (1983)) (emphasis in original). The mandatory nature of a sentence, even if it appears to be cruel, is not otherwise unusual and does not render it violative of the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (life without parole for conviction for possessing 672 grams of cocaine constitutional); *State v. Hinsley*, 627 S.W.2d 351, 355 (Tenn. 1982) (sentencing provisions of the habitual drug offender act constitutional); *State v. Teresa Fithiam,* No. 03C01-9610-CC-00381 (Tenn. Crim. App. at Knoxville, Oct. 28, 1997) (upholding statute that imposed a mandatory thirty-day incarceration period for child endangerment); *State v. Danny Lee Holder*, No. 01-C-01-9501-CC-00015 (Tenn. Crim. App. at Nashville, Mar. 22, 1996) (mandatory service of the entire sentence for defendants convicted of rape of a child constitutional).

Nor does a mandatory sentence violate the more expansive application to noncapital sentencing by our supreme court of article I, section 16 of the Tennessee Constitution. In considering the mandatory sentence under our state constitution, we must initially compare the crime committed to the sentence received. *Harris*, 844 S.W.2d at 603. "Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends – the sentence is constitutional." *Id.* However, in the few cases when the inference arises, the court must compare the sentence as applied to other criminals in the jurisdiction and sentences for the same crime in other jurisdictions. *Id.*

Following review in this case, we conclude that the imposition of a mandatory twenty-five-year sentence is not "grossly disproportionate" on its face to the crime of rape of a child. Other than the crime of first degree murder, rape of a child is perhaps the most heinous crime a person can commit in our society. *See State v. Clayton Eugene Turner, II,* No. 03C01-9805-CR-00176 (Tenn. Crim. App. at Knoxville, Oct. 6, 1999), *perm. app. denied* (Tenn., Apr. 24, 2000). Based upon their enactment of statutes, it is apparent that our general assembly has determined that the seriousness of this offense warrants a more severe punishment and that the authorized punishment for the offenses is reasonably related to the State's legitimate interest in deterring the rape of children. *See Danny Lee Holder*, No. 01-C-01-9501-CC-00015. It is clear under our law that the legislature has broad power to determine the nature and length of punishments for crimes. *Id*. This court should generally defer to the legislature's authority. *Id*. Because we have concluded that there is no "gross

disproportionality" between the mandatory twenty-five-year sentence and the crime of rape of a child, the sentence is not violative of the prohibition against cruel and unusual punishment.

Further review reveals that the challenged portion of the statute also does not violate the defendant's due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 8 of the Tennessee Constitution. The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. Amend. 5. article I, section 8 of the Tennessee Constitution states:

> [t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by judgment of his peers or the law of the land.

Tenn. Const. Art. I, § 8.

We cannot give credence to the defendant's claim that the challenged portion of the statute establishes a "non-statutory enhancing factor." On the contrary, our reading of the statute indicates that it reflects the mandatory minimum sentence set by the legislature for the crime of rape of a child. It is in no way something that a trial court would use to enhance a sentence; rather, this portion of the statute prescribes the actual minimum sentence allowed. The statute, while clearly delineating the mandatory minimum sentence for this offense, allows the trial court to impose sentences in excess of twenty-five years, if appropriate, based upon application of the enhancement factors and range delineation. Thus, the defendant's argument that the statute "wholly eviscerates" the trial court's role in sentencing is misplaced. Our review of the record reveals that the defendant has simply failed to establish that her due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 8 of the Tennessee Constitution were violated when the

trial court sentenced her pursuant to Tennessee Code Annotated section 39-13-522(b)(2)(A). Because the defendant failed to establish a violation of any constitutional provision, she has failed in carrying her burden of showing entitlement to relief.

## CONCLUSION

Based upon the foregoing, the sentences imposed in Counts Two through Five are vacated, and the case is remanded to the trial court for resentencing on those convictions in compliance with Tennessee Code Annotated section 39-13-522(b)(2)(A). The trial court should also reconsider its imposition of consecutive sentencing in light of the alteration of sentence length in this case. The determination of the trial court is affirmed in all other respects.

_____
JOHN EVERETT WILLIAMS, JUDGE